UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD O'CONNER, LARRY
PEARSON, BOATNER HOWELL,
PAULA GORDON, individually and
as members of a class

CIVIL ACTION

VERSUS

NO. 13-112-SDD-SCR

AT&T CORP., APPLE, INC.,
AND DARRYL PELTIER

## RULING

This matter is before the Court on the *Motion to Compel Arbitration*[1] filed by Defendant, Apple, Inc. ("Apple"), and the *Motion to Compel Arbitration and Stay Litigation*[2] filed by Defendant, AT&T Corporation ("AT&T). Plaintiffs have opposed the motion.[3] For the reasons which follow, the Court finds that the motions should be granted and this litigation should be stayed pending the completion of arbitration proceedings.

### I. Factual Background

Plaintiffs in this case filed a putative class action in Louisiana state court naming Apple, AT&T, and AT&T employee Darryl Peltier as Defendants. Plaintiffs alleged AT&T breached the wireless service agreements and violated the Lanham Act and the Louisiana Unfair Trade Practices Act by allegedly "throttling" the transfer speed of the internet connection for wireless data plan

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 8.

[3] Rec. Doc. 20.

Doc 67                                                             1

subscribers who exceeded a certain amount of data usage. Plaintiffs claim that "the transfer speed of the internet connection to the users in excess of 3 gigabytes of the unlimited data plan were throttled down, effectively making the unlimited data plan worthless for these users."[4] Plaintiffs claim that Darryl Peltier, as an employee of AT&T, made misrepresentations which induced Plaintiffs' purchases of unlimited wireless data plans.

AT&T removed the case to federal court, and both AT&T and Apple have moved to compel arbitration under the Federal Arbitration Act[5] and the binding arbitration provision to which all Plaintiffs agreed in accepting AT&T's *Terms of Service Agreement*. All Plaintiffs accepted an agreement with an identical arbitration provision which specifically provides that "all disputes and claims" between AT&T and the customer will be arbitrated and that class arbitrations and class actions are expressly prohibited.[6] As a non-signatory to the wireless service agreements, Apple moves to compel arbitration arguing that the doctrine of equitable estoppel permits non-signatories to compel arbitration under circumstances where the claims against a signatory and non-signatory are inextricably intertwined.

On May 27, 2013, and without leave of Court as required by the Local Rules of Court for the Middle District of Louisiana, Plaintiffs filed a *First Amending and Supplemental Complaint*, which adds claims against the Defendants for fraud and/or mutual error which Plaintiffs argue are grounds

---

[4] Rec. Doc. 1-1, p. 2.

[5] 9 U.S.C. §§ 1-16.

[6] This portion of the provision reads: "YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." Rec. Doc. No. 8-11, p. 17.

Case 3:13-cv-00112-SDD-SCR   Document 23   06/18/13   Page 2 of 11

for rescission of the contracts in their entirety.[7] While this amended complaint is not properly before the Court, the Court will consider Plaintiffs' additional claims only for the purposes of the resolution of these motions.

## II. Law and Analysis

### A. <u>Federal Arbitration Act</u>

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate related to a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[8] Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[9] The FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"[10] "This savings clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"[11] Furthermore, the "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural

---

[7] Rec. Doc. 19.

[8] 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). There is no dispute that AT&T's arbitration provision is in writing and that contracts for wireless service involve interstate commerce.

[9] *Moses H. Cone*, 460 U.S. at 24–25.

[10] *AT & T Mobility LLC v. Concepcion*, —— U.S. ——, ——, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011) (*quoting* 9 U.S.C. § 2).

[11] *Id.* (*citing Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

Case 3:13-cv-00112-SDD-SCR   Document 23   06/18/13   Page 3 of 11

policies to the contrary."[12]

"Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable."[13] When conducting this two-pronged analysis, "courts must not consider the merits of the underlying action."[14] Under § 4 of the FAA, "the federal district court ascertains only whether the arbitration clause covers the allegations at issue. 'If the dispute is within the scope of the arbitration clause, the court may not delve further into the merits of the dispute.' "[15]

## B. The Arbitration Clause is Enforceable

The United States Supreme Court recently addressed the enforcement of AT&T's arbitration provision in *AT & T Mobility LLC v. Concepcion*.[16] Specifically, the Court held that state law prohibiting class action waivers in arbitration agreements is preempted by the FAA.[17] The Court also upheld enforcement of AT&T's arbitration provision, which is materially identical to AT&T's

---

[12] *Id.* at 1479 (citations omitted).

[13] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)(*quoting R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992) (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

[14] *Id., citing Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir.1994).

[15] *Id., quoting Snap-On Tools*, 18 F.3d at 1267 (*quoting Municipal Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir.1986)).

[16] *Concepcion, supra* note 8.

[17] *Concepcion*, 131 S.Ct. at 1753.

Case 3:13-cv-00112-SDD-SCR Document 23 06/18/13 Page 4 of 11

arbitration provision in this case. In fact, in a recent case involving a class action against AT&T and Apple for breach of contract, the district court for the Eastern District of Louisiana noted: "Plaintiffs voluntarily dismissed their claims against AT&T, tacitly acknowledging that their opposition to AT&T's Motion to Compel Arbitration could not succeed after *Concepcion*."[18] In the case at bar, it clear to the Court that the parties agreed to arbitrate any and all disputes arising between them. The Court also finds no federal statute or policy which renders the claims nonarbitrable.

In their *Opposition*, Plaintiffs do not argue that the arbitration clause is unenforceable, but rather that the entire contract between themselves and AT&T should be rescinded under Louisiana law for fraud or mutual error. Plaintiffs claim: "In the event that AT&T knew it could not and would not honor its mis-representation to provide unlimited data to its customers at a price of $30 per month, their fraud vitiates consent, rescinding the contracts at issue and making them a nullity (revocation)."[19] Alternatively, Plaintiffs contend that if AT&T did not know that it could not provide the unlimited data to its customers as set forth in the contract, then the contract should be rescinded based on mutual error. Although Plaintiffs recognize that *Concepcion* broadly held that consumer contracts including arbitration clauses are binding and enforceable against state law claims of unconscionability, Plaintiffs argue Justice Thomas' concurring opinion "leaves open to litigation (not arbitration) the issue of whether or not the contract in which the arbitration clause is contained is 'valid, irrevocable, and enforceable.' "[20]

---

[18] *In re Apple iPhone 3G and 3GS "MMS" Marketing and Sales Practices Litigation*, 864 F.Supp.2d 451, 455 (E.D. La. 2012).

[19] Rec. Doc. 20, p. 2.

[20] Rec. Doc. 20, p. 1.

Both AT&T and Apple contend Plaintiffs' assertion is in direct contravention to the Supreme Court's holding in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*[21] In *Prima Paint*, the Court held that under Section 4 of the FAA, the "making" of an agreement to arbitration was not called into question by an allegation that the entire contract was void as fraudulently induced.[22] The Court held that the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally ... A federal court may consider only issues relating to the making and performance of the agreement to arbitrate."[23] Therefore, unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute.

In *Threadgill v. Orleans Parish School Board*, the court considered a motion to compel arbitration where the plaintiffs asserted that the entire contracts were invalid due to fraud.[24] Relying on *Prima Paint*, the *Threadgill* court noted that it could "consider only a challenge specifically directed to the agreement to arbitrate."[25] The court noted that "Plaintiffs do not challenge the making of the agreement to arbitrate. Instead, plaintiffs attack the validity of the contract in its entirety, making an allegation of fraud in the inducement that would require the Court to delve into the merits

---

[21] 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

[22] *Id.* at 403-04, 87 S.Ct. 1801.

[23] *Id.*

[24] No. 02-1122, 2003 WL 21244009 (E.D. La. May 23, 2003).

[25] *Id.* at *2, *citing Prima Paint*, 388 U.S. at 403-404, 87 S.Ct. 1801.

of the underlying dispute. This allegation must be submitted to the arbitrator."[26]

In the case at bar, Plaintiffs are attacking the contracts in their entirety. Therefore, the reasoning and analysis in *Prima Paint* and *Threadgill* are directly on point. To invalidate the contracts between Plaintiffs and AT&T for fraud or error would require the Court to "delve into the merits of the underlying dispute." Whether the contracts at issue should be rescinded under Louisiana law on the grounds of fraud and/or error is a question to be decided by the arbitrator.

### C. Arbitration by Equitable Estoppel

Apple is not a signatory to the wireless service agreements between AT&T and Plaintiffs. However, Apple contends that the doctrine of equitable estoppel applies in this case and allows Apple to compel arbitration under the factual circumstances present. Apple asserts that Plaintiffs' claims against both AT&T and Apple rely entirely on the wireless service agreements and are "inextricably intertwined."[27] Plaintiffs completely failed to address this issue in their *Opposition*, arguing only as follows with respect to Apple: "The *Motion to Compel Arbitration* filed by Apple piggybacks on the motion of that filed by AT&T because there is no independent agreement to arbitrate the claim between plaintiffs and Apple. If the arbitration agreement between AT&T and its customers falls, the motion of Apple fails, necessarily."[28]

The court considered this same argument by Apple in *In re Apple iPhone 3G and 3GS*

---

[26] *Id.*, citing *Prima Paint*, 388 U.S. at 403-404, 87 S.Ct. 1801.

[27] Rec. Doc. 6-1, p. 1.

[28] Rec. Doc. 20, p. 1.

Case 3:13-cv-00112-SDD-SCR   Document 23   06/18/13   Page 7 of 11

*"MMS" Marketing and Sales Practices Litigation.*[29] The court noted that under Fifth Circuit jurisprudence, "'arbitration is favored in the law.'"[30] The court also noted that "parties to arbitration agreements cannot avoid them by casting their claims in tort, and proceedings against signatories and nonsignatories to the arbitration agreement are stayed when the action against the nonsignatory is dependent upon interpretation of the underlying contract."[31] The court also stated that "the Fifth Circuit has explained that in certain limited circumstances, a nonsignatory to an arbitration agreement can require a signatory to arbitrate its claims under an equitable estoppel theory."[32] However, application of equitable estoppel is within the Court's discretion.[33]

In *In re Apple*, the court relied heavily on the opinion in *Grigson v. Creative Artists Agency, L.L.C.*[34] In *Grigson*, the Fifth Circuit set forth two instances where equitable estoppel applies which is referred to as the "intertwined-claims test." This inquiry is described as follows:

> "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the

---

[29] *See supra*, note 18.

[30] *Id.* at 458, *quoting Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

[31] *Id.*, *citing Grigson*, 210 F.3d at 526.

[32] *Id.*, *citing Grigson*, 210 F.3d at 526.

[33] *Id.* at 459, *citing Grigson*, 210 F.3d at 528.

[34] 210 F.3d 524 (5th Cir. 2000).

Case 3:13-cv-00112-SDD-SCR   Document 23   06/18/13   Page 8 of 11

nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."[35]

. . .

In short, although arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory, a signatory to that agreement cannot, in those instances described in *MS Dealer Serv. Corp.*, "have it both ways": it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory. ...[36]

Moreover, as noted, it would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding. Concomitantly, detrimental reliance by that signatory *cannot* be denied: it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory. Of course, detrimental reliance is one of the elements for the usual application of equitable estoppel.[37]

The *In re Apple* court quoted the same portions of *Grigson* as set forth above, and stated that "[e]quitable estoppel is also more likely to apply when the party resisting arbitration is a signatory, as is the case here, as opposed to when the resisting party is an non-signatory."[38]

---

[35] *Id.*, at 527, *quoting MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).

[36] *Id.* at 528, *quoting MS Dealer*, 177 F.3d at 947; *Hughes Masonry Co.*, 659 F.2d at 838-39.

[37] *Id.*, *citing e.g., In re Coastal Plains*, 179 F.3d 197, 207 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000)(emphasis in original).

[38] *In re Apple*, 864 F.Supp. 2d at 459 (*See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003); *Amisil Holdings Ltd. v. Clariumm Capital Mgmt.*, 622 F.Supp.2d 825, 831 (N.D. Cal. 2007)(citations omitted)).

Doc 67　　　　　　　　　　　　　　　9

Case 3:13-cv-00112-SDD-SCR   Document 23   06/18/13   Page 9 of 11

In the case before the Court, Apple contends all of Plaintiffs' claims against Apple rely on the wireless service agreements and are entirely intertwined with Plaintiffs' claims against AT&T regarding those agreements. Plaintiffs claim that Apple contracted with AT&T to provide the hardware on which the unlimited data plans were to be used and that Apple "intentionally interfered with the contractual obligations of AT&T CORP to its customers, unduly influencing AT&T CORP to breach its contract with the class of customers of whom Plaintiffs are members."[39] As such, it is clear to the Court that both instances under the "intertwined-claims test" are satisfied. Plaintiffs' claims against Apple rely solely on the wireless service agreements between Plaintiffs and AT&T. Plaintiffs cannot state a claim against Apple without reference to the wireless service agreements. Furthermore, to address Plaintiffs' claims against Apple would necessarily require the Court to interpret the contracts between Plaintiffs and AT&T. Plaintiffs' allegations also qualify as "substantially interdependent and concerted misconduct" by Apple and AT&T since Plaintiffs claim Apple "intentionally interfered with" AT&T's obligations under the wireless service agreement and "unduly influenced" AT&T. These claims clearly refer to "concerted misconduct." Therefore, the doctrine of equitable estoppel applies in this case, and Plaintiffs cannot avoid arbitration with Apple as mandated by the wireless service agreements.

### III. Conclusion

For the reasons set forth above, the *Motion to Compel Arbitration*[40] filed by Apple and the

---

[39] Rec. Doc. 1-1, p. 3.

[40] Rec. Doc. 6.

*Motion to Compel Arbitration and Stay Litigation*[41] filed by AT&T are GRANTED. This litigation is hereby STAYED pending resolution of the arbitration proceedings.

**IT IS SO ORDERED.**

BATON ROUGE, Louisiana, this 18 day of June, 2013.

*Shelly D. Dick*
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[41] Rec. Doc. 8.